Economy Fire & Casualty Company, Plaintiff-Appellant, v. Western States Mutual Insurance Company, Defendant-Appellee.

Gen. No. 11,847.

Second District.

May 14, 1964.

Burrell & Holtan, of Freeport (David M. Burrell, of counsel), for appellant.

Maynard & Maynard, of Rockford (James F. Maynard, of counsel), for appellee.

CARROLL, J.

This is an action by Economy Fire and Casualty Company (referred to herein as Economy), in which it seeks to recover from Western States Mutual Insurance Company (referred to herein as Western States) the amount paid by Economy on a judgment against Violet M. Pace who was insured under policies issued by both companies.

In substance, the allegations of the amended complaint are: that both the plaintiff and the defendant were licensed to write and were writing automobile insurance in this State; that on June 5, 1964, Eddie F. Janick was the owner of an automobile insured by Western States Mutual Insurance Company with bodily injury liability limits for one person in the sum of $25,000; that the policy issued to Janick contained what is commonly called an "omnibus" clause affording protection for liability resulting in bodily injuries and within the aforesaid limits to anyone operating the automobile owned by Janick and with the permission of Janick; that on the date above specified, Violet M. Pace, with Janick's permission, was operating Janick's automobile; that, theretofore, plaintiff had issued to Pace an automobile insurance policy which was in effect on the abovesaid date, for liability for personal injuries to one person in the sum of $15,000; that by the terms of plaintiff's policy issued to Pace, plaintiff's obligation was excess insurance over and above all other valid and collectible insurance and specifically was excess insurance over and above the insurance afforded to Pace by defendant by virtue of the omnibus clause in defendant's policy;

60

that on said date, while Pace was operating Janick's automobile, she collided with a child named Judy Swanson; that, thereafter, Judy Swanson, by her next friend, filed suit in the United States District Court, the ad damnum in her complaint being $250,000; that as primary insurer of Pace and as insurer of Janick, defendant, Western States Mutual Insurance Company, furnished each of said tort defendant's counsel, answered the complaint, and proceeded to jury trial; that before the case was given to the jury, Judy Swanson offered to settle for $24,000; that "11. defendant, Western States Mutual Insurance Company, refused said offer and was guilty of bad faith toward Pace in one or more of the following particulars: a. The defendant herein failed and refused to make a candid and honest evaluation of the dangers to Pace and Janick of letting the case go to jury. b. The defendant herein made a counter-offer in which it offered a sum of money less than its policy limits conditioned upon this plaintiff offering an equal amount"; and that the jury returned a verdict in favor of Judy Swanson in the amount of $50,000. The complaint further alleges that both the plaintiff and the defendant company thereafter paid their respective policy limits to Judy Swanson. Plaintiff's demand is for $15,000 plus attorney's fees and costs.

The defendant filed a motion to dismiss the amended complaint on the ground that the allegations thereof are insufficient to allege or set forth facts showing the existence of a legal duty on the part of the defendant toward the plaintiff, and that said allegations, and particularly those of paragraph 11, are insufficient in law and in fact to allege bad faith on defendant's part. The court allowed the motion to dismiss and entered judgment for defendant upon plaintiff's election to stand on its amended complaint. Plaintiff has appealed.

The first point argued in plaintiff's brief is that the allegations of the complaint are sufficient to state an issue as to defendant's bad faith. We assume the word "issue" is here used in the sense that it means a question which represents a cause of action in the plaintiff. The second proposition advanced is that plaintiff stands in the shoes of its insured, Pace, and, as subrogee, is entitled to maintain a cause of action based upon defendant's bad faith.

■■ Plaintiff's limited argument in support of its first point, is, in effect, that because it is charged in the complaint that Western States did not candidly evaluate the dangers confronting the two insureds, if the case went to the jury, therefore, such complaint must be held sufficient to state a cause of action in Economy against Western States for bad faith. Obviously, such a charge can be regarded as being no more than the plaintiff's conclusion. If there exists any fact or facts justifying such a conclusion, the same are not alleged in this complaint. The only other act alleged to have been performed in bad faith is that defendant made a counter offer to settle the tort case for less than its policy limit conditioned upon Economy offering an equal amount. Proof that defendant made such counter offer to a coinsurer would establish only that an attempt at settlement of the case had been made. This in itself does not impute bad faith on the part of either insurer. It is a rule of pleading that a complaint, in order to stand, must contain allegations of fact sufficient to state a cause of action. In passing upon a motion attacking the sufficiency of a complaint, the court disregards legal conclusions. Church v. Adler, 350 Ill App 471, 113 NE2d 327.

■ To support its argument, plaintiff cites Olympia Fields Country Club v. Bankers Indemnity Ins. Co., 325 Ill App 649, 60 NE2d 896; and Ballard v. Citi-

zens Cas. Co. of New York, 196 F2d 96. Neither of these cases is in point. In Olympia Fields, where the sufficiency of the complaint was not challenged, plaintiff, who was the insured, alleged that the defendant failed to exercise good faith towards plaintiff in arbitrarily and unreasonably refusing to accept an offer to settle a claim within policy limits and that such refusal was contrary to the advice of defendant's attorney. The Appellate Court held the trial court erred in giving a certain instruction and remanded the cause for a new trial. The major portion of the rather lengthy opinion in Olympia Fields is devoted to the question whether plaintiff had made out a prima facie case of bad faith. After an extensive review of cases decided in jurisdictions other than Illinois, the court had this to say:

"It would unduly extend this lengthy opinion to analyze many other cases cited by both parties. In our judgment, the weight of authority supports the rule that the insurer cannot be held liable for refusing to settle a case before or during trial for an amount within the limits of its liability under the policy although such refusal may result in a judgment against the assured for an amount in excess of the liability of the insurer, in the absence of fraud, negligence or bad faith."

We fail to see how the above quoted conclusion can be said to lend support to plaintiff's position in the case at bar. It does no more than announce the rule that recovery by an insured for failure of an insurer to settle a case within limits of its policy can not be had in the absence of proof of fraud, negligence or bad faith. Such rule is not applicable here where plaintiff is not the insured and where we are concerned only with the question whether the naked statement that defendant was guilty of bad faith because it

63

did not make what plaintiff labels "a candid and honest evaluation" of the dangers arising from letting the case go to the jury is, in a case between co-insurers, sufficient to state a cause of action for failure to act in good faith. We think the assertion that Western States was guilty of bad faith without alleging the facts as to what it did or failed to do which rendered it guilty of the charge laid against it, falls far short of stating a cause of action based on bad faith.

■ The term "bad faith" is defined in 6 Corpus Juris, p 880 as "Actual intent to mislead or deceive another; fraud, the opposite of good faith." It is well settled that in alleging fraud a general averment is insufficient and that the particular facts relied upon as constituting fraud must be set out. Since plaintiff's claim is essentially that it was the victim of a fraud, its complaint must be tested by such rule of pleading. The obvious omission in the complaint of specific facts which support plaintiff's claim that it was defrauded renders it fatally defective.

In the Ballard case the claim involved was not made by one insurer against another, which was the same situation which prevailed in Olympia Fields. The sufficiency of the complaint in Ballard was likewise not challenged and we find nothing in the opinion which can be regarded as authority for holding that the complaint in the instant case states a cause of action for bad faith or fraud.

Plaintiff's second point is that, having indemnified Pace, its insured, under the doctrine of subrogation, it is entitled to the means of redress held by Pace against defendant whose bad faith caused the loss. In deciding whether there is merit in such argument, it is to be observed that plaintiff proceeds upon the assumption that defendant was the primary insurer of Pace and that plaintiff's policy was excess or secondary. We are unable to agree that such assump-

64

tion is warranted. Both of the policies involved contained identical "other insurance" clauses which are as follows:

"Other insurance: If the insured has other insurance against a loss covered by Part 1 of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."

It was held in Continental Cas. Co. v. New Amsterdam Cas. Co., 28 Ill App2d 489, 171 NE2d 406 that, where both applicable policies contain the same provisions with respect to "other insurance" including an "excess" insurance provision, such provisions are to be disregarded as being mutually repugnant and each company is liable for a pro rata share of the liability of the common insured on a pro rata basis.

The facts in Continental Casualty were that one, Collins, a resident of New York rented a car from Couture National Car Rental System, and was involved in an automobile collision in Florida. Collins owned an automobile liability insurance policy purchased from New Amsterdam Casualty Company, describing two Nash automobiles owned by him but providing that if Collins was driving "any other automobile" he would be covered thereby, but that the insurance with respect to other automobiles would be excess insurance over any other valid and collectible insurance available to Collins. Continental Casualty Company insured Couture National Car Rental System under a

65

policy containing among other things an "Other Insurance" clause identical to that in the New Amsterdam policy. Continental settled the personal injury claim against Collins resulting from the accident, and then brought suit against New Amsterdam Casualty Company to recover a portion of the money paid in settlement of the claim asserted against Collins who was insured by both companies. The trial court granted New Amsterdam's motion for summary judgment which relieved it of all liability. The Appellate Court reversed and directed the trial court to allow Continental's motion for judgment in the amount of New Amsterdam's pro rata share of the amount paid in settlement of the claim against Collins. In its opinion, the court expressed the reasoning underlying its conclusion in this language:

"The rationale of the decisions heretofore discussed as supporting Continental's position is that (1) each policy standing alone extends coverage to the insured for the occurrence in question; (2) the clauses providing that each policy is to be considered 'excess' insurance over any other insurance available to the insured are directly and mutually repugnant and should therefore be disregarded; and (3) each company is liable for a pro rata share of the judgment or settlement, usually for that per cent of the liability which its policy limits bear to the total limits available to the insured. In our opinion, these cases leave no room for doubt that the trial court erred in completely absolving Amsterdam of liability under its policy, despite the fact that its policy contained the same provisions as Continental's in so far as the claim asserted against Collins is concerned. This holding runs counter to the decisions of other jurisdictions which we consider to

66

be well reasoned and which ought, accordingly, to be followed in Illinois."

Among the cases cited and relied upon by the court in Continental is Oregon Auto Ins. Co. v. United States Fidelity & Guaranty Co., 195 F2d 958. In the Oregon case, the driver of a rented car was involved in an accident and a judgment was obtained against him. The policy of the driver and that of the rental agency each provided that it was not applicable if other insurance was available to the insured. It was there urged as it is in the instant case that one of the policies involved was primary and the other secondary. The Oregon Court rejected such argument and had this to say:

"In our opinion the 'other insurance' provisions of the two policies are indistinguishable in meaning and intent. One cannot rationally choose between them. We understand the parties to concede that where neither policy has an 'other insurance' provision, the rule is to hold the two insurers liable to prorate in proportion to the amount of insurance provided by their respective policies. Here where both policies carry like 'other insurance' provisions, we think (they) must be held mutually repugnant and hence be disregarded. Our conclusion is that such view affords the only rational solution of the dispute in this case. The proration is to be applied in respect both of damages and of the expense of defending the suits."

Other cases cited in the Continental opinion, and in which the rule in Oregon was adopted are Continental Cas. Co. v. St. Paul Mercury Fire and Marine Co., 163 F Supp 325. Beattie v. American Automobile Ins. Co., 338 Mass 526, 156 NE2d 49. Reetz v. Werch, 8 Wis2d 388, 98 NW2d 924. Continental Cas. Co. v. Buck-

eye Union Cas. Co., 143 NE2d 160 (Ohio). In the Buckeye Union case, where both policies contained "other insurance" clauses providing for "excess" insurance, the court holding each insurer pro rata liable said:

> "There can be no 'excess' insurance in the absence of a 'primary insurance,' and it must follow that since neither policy by its terms is a policy of 'primary' insurance, neither policy can operate as a policy of 'excess' insurance. The policies are not changed. The 'excess' provisions of the policy merely are inoperative as being impossible of accomplishment in the same way that such excess provisions are inoperative if there is no other insurance in effect . . . having concluded that neither 'excess' feature is operative in the absence of 'primary' insurance (not court created 'primary' insurance but 'primary' insurance under the specific terms of the other policy), we necessarily conclude that each is pro rata liable within the monetary limits of its policy for any damages and likewise is obligated to share pro rata in the expense of defense."

Plaintiff characterizes the reasoning in the Continental case as being tortured and unnecessary, but cites no Illinois case involving like facts in which a contrary rule has been applied. In Laurie v. Holland America Ins. Co., 31 Ill App2d 437, 176 NE2d 678 where the court had occasion to consider the question whether one of two policies containing excess insurance clauses can be held to be primary and the other secondary, we find the Continental case cited with approval and followed. In the instant case plaintiff paid the amount of its policy which it was required to do under its insurance contract. Its contract was independent of that entered into by defendant. The

68

amount of plaintiffs payment to its insured did not exceed the amount it agreed to pay. We perceive no basis for the conclusion that it is entitled to be reimbursed by plaintiff for the amount so paid.

██ The right to subrogation rests upon the principle that a person, who, pursuant to a legal liability has paid for a loss or injury caused by the negligence or wrongful act of another, will be given the rights of the injured person against the wrongdoer. It applies only to the rights of innocently injured persons. Dvorak v. Tempel, 17 Ill2d 181, 161 NE2d. It is contended here that Economy having paid its policy limit is entitled to the means of redress held by Pace against Western States. The means of redress is said to be a cause of action in Pace for bad faith and negligence on the part of Western States. A subrogee succeeds only to the remedies of the person indemnified. What remedy could Pace have against Western States? Its obligation to her was discharged by payment of the policy limit and accordingly she had no rights to which Economy could be subrogated. Furthermore, Pace could acquire no rights which would qualify as the subject of subrogation for the reason that she was found guilty in the tort action and was not an innocent person. The Dvorak case supra, upon which plaintiff relies, holds only that a dram shop insurer who pays a loss is subrogated to the rights of its insured against a third party whose negligence or wrongful acts caused the loss. The same rule was applied in Remsen v. Midway Liquors, Inc., 30 Ill App2d 132, 174 NE2d 7. In both Dvorak and Remsen the court held that the doctrine of subrogation applied because the plaintiff stood in the shoes of an innocent person who had a right to redress against the person who had injured him. Here Pace has no right to redress against Western States because the latter met its obligation under its policy. In Fireman's Fund Indemnity Co. v.

Freeport Ins. Co., 30 Ill App2d 69, 173 NE2d 543, also cited by the plaintiff, we find no reference to the question of subrogation.

For the reasons indicated, we are of the opinion that the trial court did not err in sustaining defendant's motion to dismiss the complaint. Accordingly the judgment of the Circuit Court is affirmed.

Affirmed.

ABRAHAMSON, P. J. and MORAN, J., concur.