Automobile Underwriters, Incorporated, Attorney-in-Fact for Subscribers at State Automobile Insurance Association, Plaintiff-Appellant, v. Hardware Mutual Casualty Company, a Mutual Insurance Company, Laura Koehl, Janet Koehl and Lawson M. Hopkins, d/b/a Hopkins Motor Sales and Service, Defendant-Appellant.

Gen. No. 69–1.

Third District.

February 27, 1970.

Westervelt, Johnson, Nicoll & Keller, and Heyl, Royster, Voelker & Allen, of Peoria, for appellant.

Frederick W. Allen and McConnell, Kennedy, McConnell & Morris, of Peoria, for appellee.

RYAN, J.

This case involves a dispute between two insurance companies as to which company is obligated to furnish defendant a defense in litigation which arose out of an automobile collision.

One, Grant, was test driving an automobile with a view to buying the same. The automobile was owned by Hopkins Motor Sales and Service. Grant was involved in an accident with another automobile, the occupants of which were injured and who subsequently sued both Grant and Hopkins. Hopkins' insurer (defendant herein) refused to defend Grant. Grant's insurer on a policy of automobile liability insurance covering another automobile sued Hopkins' insurer for a declaratory judgment. The trial court held that the owner, Hopkins' insurer was under no obligation to defend the driver Grant. We are of the opinion that the trial court was correct.

The dispute arose by virtue of apparently conflicting provisions of the two insurance policies. Grant's policy issued by the plaintiff, Automobile Underwriters, Inc., agreed to pay all sums the insured became liable to pay as damages for bodily injury or property damage arising out of the use of "the owned automobile or any non-owned automobile." An owned automobile is defined as including a temporary substitute automobile. "A non-owned automobile" is defined as "an automobile . . . not owned or furnished for the regular use of either the named insured . . . other than a temporary substitute automobile." The policy then provides under the heading of "Other Insurance" as follows:

> ". . . provided, however, the insurance with respect to a temporary substitute automobile or nonowned automobile shall be *excess insurance* over any other valid and collectible insurance." (Emphasis added.)

Hopkins, the owner, had an automobile garage liability policy which had been issued by the defendant, Hardware Mutual Casualty Company, and which provides coverage for liability arising out of certain automobile accidents. Attached thereto was a document entitled

161

"Limited Coverage for Certain Insured's Endorsement." This endorsement commences with the following recital:

> "In consideration of the reduced rate of premium made applicable to the insurance under Part 1, it is agreed that this policy section is amended as follows:
>
> "1. Paragraph 3 of 'Persons Insured' is amended to read as follows:
>
> ". . .
>
> "(3) (b) Any other person, but only if no other valid and collectible automobile, liability insurance, *either primary or excess* . . . is available to such person; . . . ." (Emphasis added.)

The conflict arises by virtue of the italicized portions of the provisions of the two policies set forth above. The clause in plaintiff's policy (driver Grant's insurer) is commonly referred to as an "excess insurance" clause, while that in Hardware's policy (owner Hopkins' insurer) is referred to as an "escape" or "no liability" clause. The plaintiff has discussed the so-called majority view and minority view as these clauses have been interpreted by the courts. It is not necessary to detail these decisions in this opinion. They had been discussed at length by our Supreme Court in New Amsterdam Cas. Co. v. Certain Underwriters at Lloyds, London, 34 Ill2d 424, 216 NE2d 665. The New Amsterdam decision has aligned Illinois on the side of the majority view favoring "excess" clauses over "escape" or "no liability" clauses in insurance policies. In that case the court stated that the majority rule is: When the owner of an automobile has a policy with an omnibus clause, and the additional insured also has a nonownership policy which provides that it shall only constitute excess coverage over and above other valid collectible insurance, the

owners' insurer has the primary liability. Under this rule the courts give no application to the other insurance clause in the primary policy, which provides that if the additional insured has other valid and collectible insurance he shall not be covered by the primary policy. (Page 430.)

The "escape" clause involved in the New Amsterdam case provided that if any person entitled to indemnification thereunder "is also covered by other valid and collectible insurance, such other person . . . shall not be indemnified under this policy."

The essential difference in this "escape clause" and the "escape clause" in Hardware's policy in the case now before us is the inclusion in Hardware's clause after the words "other valid and collectible automobile liability insurance" the further qualifying words "either *primary* or *excess*." These words were not in the "escape" or "no liability" clause which was interpreted in the New Amsterdam case. This difference, we conclude, renders the holding in the New Amsterdam case inapplicable in the case now under consideration. The decision in this case is in no manner designed to reduce or avoid the application of the decision in the New Amsterdam case. Our decision is solely applicable to the cause before this court and is rendered necessary by these specific facts of the case and language of the endorsement to Hardware's policy set forth above.

In Indiana Lumbermens Mut. Ins. Co. v. Mitchell, 285 F Supp 969 (1968) the District Court for the Eastern District of Illinois had before it an "escape" clause which included identical language to that used in Hardware's policy including the words "either primary or excess." The court held that because of the inclusion of the restrictive language in the clause before it which was not involved in the New Amsterdam case, the policies in the two cases were distinguishable and New Amsterdam was not controlling. This decision was affirmed by the Cir-

cuit Court of Appeals for the 7th Circuit in 409 F2d 392, where the court stated that it was this specific inclusion of "excess" insurance within the meaning of "other valid and collectible insurance" which relieved Lumbermens of the obligation to defend in that case.

In 7 Am Jur2d, Automobile Insurance, § 202, the authors define five different situations in which conflicts between insurers are involved. The fifth of these situations is stated thus:

> (5) Where a "no liability" clause expressly designates the type of insurance with which it might conflict.

The authors then state how the courts have dealt with the various situations and with reference to the fifth the following is stated:

> "In the fifth situation . . . where the 'no liability' clause expressly provides that the insurance does not apply to any loss covered by other specified types of insurance, including the 'excess insurance' type . . . it has been held that the insurance company whose policy so provides will be absolved from liability."

The situation in the case under consideration falls within the provisions of the fifth situation set forth above. Hardware's policy has specifically provided that its insurance does not apply when other types of insurance including "excess insurance" are available. Excess insurance is available to the driver Grant under the terms of his own policy issued by the plaintiff. Therefore the insurance provided by Hardware's policy "never came to life." Indiana Lumbermens Mut. Ins. Co. v. Mitchell, supra.

In interpreting "escape" or "no liability" clauses similar to that involved in our case the following cases in other jurisdictions have reached the same conclusion.

164

United States Fidelity & Guaranty Co. v. Dixie Auto Ins. Co., 292 F Supp 554 (Ala 1968); Continental Cas. Co. v. Weekes (Fla), 74 So2d 367 (1954); Government Employees Ins. Co. v. Globe Indemnity Co. (Ky), 415 SW 2d 581 (1967), and Faltersack v. Vanden Boogaard, 39 Wis2d 64, 158 NW2d 322 (1968).

The plaintiff attempts to distinguish the Indiana Lumbermens Mut. Ins. Co. case from the one now before us by calling out attention to the fact that in Lumbermens the driver was operating the garage's automobile as a "temporary substitute automobile" while his vehicle was being repaired, noting that the driver was operating it for his own use and benefit. Whereas in the case before us the driver Grant was operating not a "temporary substitute automobile" but a "nonowned automobile" which he was test driving to determine if he wanted to purchase it. Plaintiff insists that the driver Grant was not driving this automobile for his own use or benefit but for an ultimate benefit that would inure to the owner.

We cannot accept this distinction. By the provisions of the driver Grant's policy the plaintiff insurer agreed to pay all sums which Grant became obligated to pay as damages arising out of the use of the *owned automobile* or *any nonowned automobile.* The policy defines "owned automobile" as including "temporary substitute automobile." The policy defines a "nonowned automobile" as an automobile not owned by or furnished for the regular use of either the named insured, other than a temporary substitute automobile. Grant's policy provides that the insurance with respect to a *temporary substitute automobile* or *nonowned automobile* shall be excess insurance.

Whether Grant was operating a "nonowned automobile" as in this case or a "temporary substitute automobile" as in the Lumbermen's case, in either event his insurer agreed to indemnify him from any liability. The

165

provisions of the "other insurance" clause in his policy provides that in either event the insurance shall be "excess insurance." Since the endorsement on the defendant Hardware's policy includes within the term "person insured" any other person but only if no other valid and collectible automobile liability insurance, either primary or excess is available, then by virtue of the availability of excess insurance under Grant's policy he could not be considered a "person insured" under the defendant's policy by virtue of this specific exclusion, regardless of whether he was driving a temporary substitute automobile or a nonowned automobile and regardless of who derived the benefits from the operation of the vehicle.

We are not confronted with the question of who should more logically bear the loss. We are confronted with the task of interpreting the contracts of insurance and determining liability and responsibility thereunder. We must make this determination from the language used in the policies. Where the terms of an insurance policy are clear and unambiguous the court must give effect to the intent of the parties to the contract in accordance with the clear expression of agreement. McCann v. Continental Cas. Co., 8 Ill2d 476, 134 NE2d 302. The principles involved in the construction of the insurance contracts are the same as those involved in construing other contracts. The contracts must be interpreted according to the sense and meaning of the terms which the parties use. Jensen v. New Amsterdam Ins. Co., 65 Ill App2d 407, 213 NE2d 141. The language of the endorsement to Hardware's policy evidences an intent to limit or restrict the coverage afforded under the original policy of insurance. The limitation or restriction relates to the persons who will be considered within the class of "any other person" as that term is used in the policy in relation to "persons insured." The endorsement plainly states that "any other person" is not a "per-

son insured" under the policy if valid and collectible excess automobile liability insurance is available to such person. The consideration for this limitation or restriction as to the coverage is, in the language of the endorsement, "in consideration for the reduced rate of premium." Indiana Lumbermens Mut. Ins. Co. v. Mitchell, 409 F2d 392.

It is disturbing to this court and we are sure to policy owners, to be constantly confronted with policies each purporting to exclude liability when two or more policies are involved. In the battle of exclusionary clauses, each being designed and redesigned to avoid liability in light of the latest judicial interpretation, the court may well ultimately find that justice and equity demand that it hold that each policy be intended to cover the loss and that the resulting loss be prorated among the companies involved. In view of the particular facts before this court and the language involved in the policies herein, we do not feel justified in invoking such a doctrine in this case.

We do not feel that the provisions of the Illinois Financial Responsibility Act (Ill Rev Stats 1965, c 95½, § 7–301 et seq.) must be read into Hardware's policy as plaintiff contends. Section 7–317(b)2 of the Act provides that an owner's policy of liability insurance shall insure the person named therein and any other person using or responsible for the use of said motor vehicle with the express or implied permission of the insured. Plaintiff's position finds support in American Motorists Ins. Co. v. Kaplan, 209 Va 53, 161 SE2d 359 (1968); Wildman v. Government Employees' Ins. Co., 48 Cal2d 31, 307 P2d 359 (1957); Republic Indemnity Co. of America v. Employers Liability Assur. Corp., 267 Cal App2d 121, 72 Cal Rptr 718 (1968). Plaintiff also relies on Landis v. New Amsterdam Cas. Co., 347 Ill App 560, 107 NE2d 187 (1952) wherein the court read the omnibus clause of the Financial Responsibility Act into the

167

policy of insurance which insured a truck involved in an accident while being driven by a person not covered by the policy.

However, since the decision in the Landis case, there have been several Illinois decisions to the contrary. In McCann v. Continental Cas. Co., 6 Ill App2d 527, 128 NE2d 624, the court distinguished the Landis case finding that in Landis the insured vehicle was a truck; that the insurance carrier had issued a certificate that the policy complied with section 16 of the Illinois Truck Act (Ill Rev Stats 1951, c 95½, par 253) ; that this certificate was filed with the Secretary of State and that the policy was a compulsory or required policy under the provisions of the Truck Act. The court, while agreeing with the results reached in the Landis case, would not adopt the reasoning thereof and held that the general omnibus clause of the Financial Responsibility Act would not be read into the insurance policy there under consideration. The court noted that there is not a general statutory provision making insurance compulsory in all cases nor is there a statute in this state requiring an omnibus clause in every policy of insurance. It noted that there is in the Financial Responsibility Act a requirement of an omnibus clause in the policy insuring all drivers only when that policy is used as proof of financial responsibility under the Act. The court concluded that since the insured had not been required by any statutory provision to furnish proof of his financial responsibility, the general omnibus clause of the statute would not be read into the insured's automobile liability insurance policy. The Supreme Court affirmed the decision of the Appellate Court in 8 Ill2d 476, 134 NE2d 302. The Supreme Court also held that the language of the policy making the insurance afforded comply with the provisions of Financial Responsibility Laws does not incorporate the provisions of the Financial Responsibility Act into the policy by reference until something transpires which requires

that the insured furnish proof of his financial responsibility and the policy of insurance is certified for that purpose under the Act. The decision of the McCann case has been followed in Stollery Bros. v. Inter-Insurance Exchange, 15 Ill App2d 179, 145 NE2d 768.

Nothing has been presented to the court in this case that would indicate that owner Hopkins (defendant's insured) had by his previous conduct brought himself within the purview of the Financial Responsibility Act or that the policy of insurance in question had been certified as proof of financial responsibility. Therefore, the decision in McCann controls this case. We hold that the general omnibus clause of the Financial Responsibility Act has not been incorporated into the policy of insurance of the defendant.

An annotation on this subject including a discussion of decisions to the contrary in other jurisdictions is contained in 8 ALR3rd 388.

Summarizing, we hold:

(1) That the terms of the restrictive endorsement in Hardware's policy will prevail over the excess insurance provision of plaintiff's policy;

(2) That the fact that the driver was driving a non-owned automobile instead of a temporary substitute automobile is not a distinction of consequence so far as the questions involved in this case are concerned and;

(3) That the omnibus clause of the Financial Responsibility Act will not be read into the contract of insurance nor will it be incorporated therein by reference by the language used in the policy.

Accordingly, the decision of the trial court is affirmed.

Affirmed.

STOUDER and ALLOY, JJ., concur.