(No. 39323.—)

NEW AMSTERDAM CASUALTY COMPANY, Appellant, *vs.*
CERTAIN UNDERWRITERS AT LLOYDS, LONDON, Appellees.

*Opinion filed March 24, 1966.—Rehearing denied May 18, 1966.*

J. V. Schaffenegger, of Chicago, (Jack L. Watson and James G. Chapman, of counsel,) for appellant.

Lord, Bissell & Brook, of Chicago, (Richard E. Mueller, Thomas L. Stevens, and Stephen H. Cohen, of counsel,) for appellees.

Mr. Justice House delivered the opinion of the court:

The municipal court of Chicago entered a judgment on the pleadings in favor of the defendants (Lloyds) holding the plaintiff, New Amsterdam Casualty Company, solely liable for damages when its named insured, Chester A. Fiske, was involved in an accident while driving a rented automobile insured by Lloyds. The Appellate Court, First District, reversed the judgment and ruled that each insurer was liable for damages and costs in proportion to the amount of insurance provided in its policy. (56 Ill. App. 2d 224.) We granted plaintiff's petition for leave to appeal.

The plaintiff contends that Lloyds is liable for the full amount of the damages and costs and that plaintiff's policy provided only insurance in excess of the amount covered by the Lloyds policy. On February 23, 1954, Fiske was involved in an accident while driving an automobile belonging to HAV-A-KAR, an auto rental company. Chuinard, the other driver involved in the accident, filed suit against Fiske, who forwarded the summons to plaintiff. Upon Lloyds refusal to defend Fiske, plaintiff proceeded with the defense. It then settled the case and brought this action for reimbursement of the amount paid in settlement and for the expenses of the defense.

Prior to the date of the accident, Fiske had purchased an insurance policy from the plaintiff protecting him from liability arising out of the operation of his automobile, a

Chevrolet, and any other car which he might operate. The pertinent provisions of plaintiff's policy are as follows:

"V. USE OF OTHER AUTOMOBILES. If the named insured is an individual who owns the automobile classified as pleasure and business * * * such insurance as is afforded by this policy for bodily injury liability, for property damage liability, and for medical payments with respect to said automobile applies with respect to any other automobile, * * *.

\* \* \*

"18. OTHER INSURANCE * * * [T]he insurance with respect to * * * other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance available to insured, either as an insured under a policy applicable with respect to said automobile or otherwise."

Lloyds had issued a blanket policy to certain named persons doing business as HAV-A-KAR, covering all their vehicles. This policy, which was in force at the time of the accident, included as insured any person driving the insured automobiles with the permission of the named insured. The pertinent provisions of the Lloyds policy are as follows:

"OMNIBUS CLAUSE:—except where specifically stated to the contrary, the unqualified word 'Assured' wherever used in this policy includes not only the Named Assured, but also any person while using the automobile described herein and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is 'Pleasure and Business' as defined herein, and provided further the actual use is with the permission of the Named Assured.

\* \* \*

"6. OTHER INSURANCE * * * If any person, firm, or corporation other than the Assured named in the Schedule is, under the terms of this policy, entitled to be indemnified hereunder and is also covered by other valid and collectible insurance, such other person, firm or corporation shall not be indemnified under this policy."

Both parties agree that Fiske was driving the HAV-A-KAR vehicle with the permission of the named insured. It is clear that had either policy been in force without the existence of the other, either company would have assumed full liability under its policy. The question here presented is what

effect the "other insurance" clauses have, if any, as to the ultimate liability for the damages.

Plaintiff contends that it provided "excess" insurance coverage only, that is, insurance in excess of other insurance available to the insured when driving an automobile other than the car named in his policy. Therefore, plaintiff argues that the limits of Lloyds insurance coverage should be exhausted before plaintiff's coverage becomes available, and since the amount of the damages and expenses was within the limits of the Lloyds policy, plaintiff should not have to bear any of the loss.

Lloyds contends that Fiske was covered by "other valid and collectible insurance" at the time of the accident, that is, by the plaintiff's policy, and therefore, Lloyds provided no coverage by virtue of its "other insurance" clause (known as an "escape" clause) specifically denying coverage should other valid and collectible insurance be available. It argues, in the alternative, that if the court does not hold plaintiff primarily liable the loss should be prorated between the two insurers. This result could be reached, it is argued, by holding that neither "other insurance" clause comes into effect because there is no "other valid and collectible insurance" within the meaning of either policy, therefore both are liable *pro rata*.

The cases dealing with this question are in conflict. Counsel have not cited nor are we aware of any case decided by this court concerning the precise question presented. The Appellate Court cited three earlier Appellate Court cases as being consistent with their holding in this case. (*Continental Casualty Co.* v. *New Amsterdam Casualty Co.* 28 Ill. App. 2d 489; *Laurie* v. *Holland America Ins. Co.* 31 Ill. App. 2d 437; *Economy Fire & Casualty Co.* v. *Western States Mutual Ins. Co.* 49 Ill. App. 2d 59.) Those cases involved policies with practically identical "other insurance" clauses. In each case each policy provided that each company was not liable except for the excess of other valid and collectible

insurance available to the insured. In those cases, reliance was placed on *Oregon Auto Ins. Co.* v. *United States Fidelity & Guaranty Co.* (9th cir.) 195 F.2d 958. The court held that "other insurance" clauses similar to those here involved were indistinguishable in meaning and intent and were "like clauses." It went on to say that where both policies carry "like" other insurance provisions, they are "mutually repugnant" and must be disregarded, and the damages and expenses of defending the suit must be prorated.

The *Oregon Auto Ins. Co.* case has been followed in several cases decided under Oregon law. (*Gillery* v. *Andrew Weir Ins. Co.* (9th cir.) 291 F.2d 132, (applying Oregon law under a conflict-of-laws rule); *Travelers Ins. Co.* v. *Peerless Ins. Co.* (9th cir.) 287 F.2d 742; *General Accident Fire & Life Assurance Corp., Ltd.* v. *Continental Casualty Co.* (9th cir.) 287 F.2d 464; *Lamb-Weston, Inc.* v. *Oregon Automobile Ins. Co.* 219 Ore. 110, 341 P.2d 110, 76 A.L.R. 2d 485.) In each of the above cited cases from the 9th circuit, the court stated that under the applicable State law the two "other insurance" clauses in question were mutually repugnant and that liability of the insurers must be prorated.

The Oregon rule, however, represents the minority view. The majority view seems to be that in the case of an apparent conflict between an "escape" clause in one policy and an "excess" clause in the other policy, the "excess" clause is to be given effect. (See Annotation 46 A.L.R. 2d 1163.) In *Zurich General Accident and Life Ins. Co.* v. *Clamor* (7th cir.) 124 F.2d 717, the automobile owner's insurer provided coverage for a person driving the car with permission if he did not have other valid and collectible insurance, and the driver's insurer provided coverage for him while driving another's car with permission, except that the insurance constituted only "excess insurance" over any other valid and collectible insurance available to the insured. The court held the owner's insurer liable since the driver's "excess insurance" was not other collectible insurance. (Stated

differently, the "excess insurance" provided by the driver's insurer is not "other insurance" as required by the owner's insurer to exempt the latter from liability.) The court said that in order to give effect to the difference in the "other insurance" provisions of the two policies, it was logical to conclude that the owner's insurer was liable to the extent named in its policy, and that the driver's insurer was liable only for any excess over that provided by the owner's insurer.

In *Continental Casualty Co. v. Curtis Publishing Co.* (3rd cir.) 94 F.2d 710, the court stated that by reason of an excess coverage provision in the employer's policy, liability thereunder did not arise until the collectible limits under the employee's policy were reached. The employee's policy contained an escape clause almost identical to the clause contained in the Lloyds policy here.

In *Michigan Alkali Co. v. Bankers Indemnity Ins. Co.* (2d cir.) 103 F.2d 345, the defendant's policy contained the same "no-liability" clause with regard to other persons driving the vehicle with the insured's permission as is contained in the Lloyds policy, and the plaintiff's insurer's excess insurance clause was the same as New Amsterdam's clause here. The court held that plaintiff's policy "was only excess insurance if at the time of loss the plaintiff was otherwise insured. The plaintiff was so insured by virtue of defendant's policy, since the loss was within its limits and the policy was not invalidated under the terms of [its escape clause] by excess insurance but only by 'collectible' insurance."

In *St. Paul Fire & Marine Ins. Co. v. Garza County Warehouse & Marketing Associates,* (4th cir.) 93 F.2d 590, where "excess" and "escape" clauses similar to those in question here were involved, the court said that a common-sense construction of the policy containing the excess clause compels the conclusion that it does not cover except as excess insurance, although the other policy also provided

for its avoidance by other insurance, for as to such other policy, the policy containing the excess clause was not "other" but merely "excess" insurance.

Plaintiff's policy specifically provides that its insurance of Fiske's liability arising out of the use of other automobiles shall be excess insurance over collectible insurance available to Fiske "under a policy applicable with respect to said automobile or otherwise." (See *American Surety Co. of N.Y. v. Canal Ins. Co.* (4th cir.) 258 F.2d 934.) The majority rule has been stated to be: when the owner of an automobile "has a policy with an omnibus clause, and the additional insured also has a non-ownership policy which provides that it shall only constitute excess coverage over and above any other valid, collectible insurance, the owner's insurer has the primary liability * * * [U]nder this rule the courts give no application to the other insurance clause in the primary policy, which provides that if the additional insured has other valid and collectible insurance, he shall not be covered by the primary policy." 8 Appleman, Insurance Law and Practice, sec. 4914 (1942 ed.)

The majority view seems more persuasive. We hold that the plaintiff extended its insurance to protect Fiske while driving the car involved in the accident with the permission of the named insured only for excess insurance over the valid collectible insurance available to him under the omnibus provision of the Lloyds policy. Lloyds does not escape through use of the clause denying liability if any person other than the named insured is also covered by other valid and collectible insurance, because plaintiff's policy was not "other" insurance but rather "excess" coverage. Since the liability limits of the Lloyds policy is in excess of the amount of damages, plaintiff's excess insurance never came into force. It did not furnish "other valid and collectible insurance" and Lloyds must bear the entire amount of the damages and costs.

Lloyds also argues that the plaintiff should not be en-

titled to recover the costs of defense it expended in defending Fiske. Specifically, it contends that the plaintiff's policy provides a continuing obligation to defend its named insured, independent of any liability to pay damages, and plaintiff's "other insurance" provision merely provides that the insurance is excess against a *loss* covered by its policy.

There are several cases which support this contention. (*United States Fidelity & Guaranty Co.* v. *Tri-State Ins. Co.* (10th cir.) 285 F.2d 579; *American Casualty Co.* v. *Pennsylvania T. & F. M. Casualty Ins. Co.* (5th cir.) 280 F.2d 453.) However, we think the better view is expressed in *Continental Casualty Co.* v. *American Fidelity & Casualty Co.* (7th cir.) 275 F.2d 381, wherein the court held the excess insurer was entitled to be reimbursed for its costs of defense as well as for the damages paid. Here, plaintiff had an interest to protect, for it would be liable for any damages in excess of the limits of the Lloyds policy. As long as defendant disclaimed coverage and refused to defend Fiske, there was no admitted or established "other valid and collectible" insurance. Under its contract of insurance with Fiske, plaintiff was therefore compelled to defend and pay the damages. This is not an action by plaintiff for contribution; rather it is an action in subrogation of its insured's right to be fully protected for damages and costs of defense that Lloyds was liable to pay. As stated in *American Surety Co. of N.Y.* v. *Canal Ins. Co.* 258 F.2d 934, "loss should not fall irrevocably upon that insurer which first recognizes its obligations, while one neglectful of its duty is allowed to escape." We agree.

The judgment of the Appellate Court, First District, is reversed and the cause remanded to the circuit court of Cook County with directions to enter a judgment in favor of plaintiff for the full amount of damages and expense.

*Reversed and remanded, with directions.*